**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| In re Tri State Water Rights Litigation | Case No. 3:07-MD-1-PAM |
|---|---|

# JOINT NOTICE OF INTENTION TO CALL EXPERTS ON REMEDIES ISSUES PURSUANT TO FIFTH AMENDED SCHEDULING ORDER

In accordance with this Court's Fifth Amended Joint Scheduling Order (Doc. 266), the State of Georgia, the Atlanta Regional Commission, the City of Atlanta, Georgia, Fulton County, DeKalb County, the Cobb County-Marietta Water Authority, the City of Gainesville, Georgia, Gwinnett County, and the Lake Lanier Association (collectively, the "Georgia Parties") provide notice of their intentions with respect to expert witnesses.

Although the Georgia Parties do not intend to call experts on the merits of any Phase 2 issue, they do believe that extra-record evidence, including expert testimony, may be necessary if the Court must fashion a remedy in this phase of the case. Consistent with this Court's prior ruling on the use of experts in Phase 1, however, the Georgia Parties also acknowledge that it would be premature to identify the subject matter of such testimony at this time. First, it is not known at this time whether any party will prevail on the merits of its claims against the Corps' Revised Interim Operating Plan for Jim Woodruff Dam ("RIOP") and/or the U.S. Fish and Wildlife Service's Biological Opinion. Second, even if a party does prevail on some point or another, it is impossible to know at this time whether this would simply require a remand to the agency or whether it would be appropriate and necessary for the Court to fashion an interim or permanent remedy.

Accordingly, the Georgia Parties request that they be permitted to amend this Notice, if necessary and appropriate, after the Court has ruled on the merits of the Phase 2 issues. Because the Fifth Amended Scheduling Order requires the Georgia Parties to identify the subject matter of expert testimony relating to remedies issues at this time, however, the Georgia Parties have also identified below the subjects upon which they believe expert testimony might be required if it is necessary for the Court to fashion a remedy relating to Phase 2 issues.

**DISCUSSION**

In Phase 2 of this litigation, this Court will consider a broad array of challenges to the legality of the Corps' operations under the RIOP; the Biological Opinions that analyze the effects of those operations on four species that inhabit the Apalachicola River protected under the Endangered Species Act ("ESA"); and the Corps' compliance with the consultation requirements and take prohibition of Sections 7 and 9 of the ESA.

The Georgia Parties respectfully suggest that the Court can and should consider extra-record evidence, including expert testimony, before fashioning any remedy that might affect the Corps' operation of the ACF Reservoirs and/or the health and well-being of the millions of people who rely on this system. "[T]he rule confining review to the administrative record before the agency is limited to the review of the agency's actions and does not apply to evidence concerning a court's later consideration of the appropriateness of an equitable remedy for unlawful agency action or defenses thereto." *City of Reading v. Austin*, 816 F. Supp. 351, 361 n.7 (E.D. Pa. 1993). Indeed, courts routinely consider extra-record materials relating to remedies, including expert testimony, in complex water-resources cases such as

this one. *See, e.g.*, *Natural Res. Defense Council v. Kempthorne*, No. 1:05-cv-1207, 2007 WL 4462391, *1 (E.D. Cal. Dec. 14, 2007) (conducting seven-day evidentiary hearing and accepting voluminous expert testimony in case challenging operations of complex California water project under ESA).

Expert testimony would be essential to the Court in fashioning an appropriate remedy in this case, should this Court determine that any claim in Phase 2 has merit and should a remedy be necessary or appropriate pending or in lieu of remand. The management of the ACF River Basin is extraordinarily complex, requiring the Corps to consider a myriad of operational objectives and interests, hydrological and operational constraints, and the physical limitations of its projects. Some of the plaintiffs in Phase 2, however, ask this Court to dictate the operation of the system—to order the Corps to operate the system in a specific way, or to provide specific releases to meet certain objectives. The State of Florida, for example, requests an injunction requiring the Corps, among other things, "to provide flow support (including releases from reservoir storage when necessary) to ensure that [protected species in] the Apalachicola River . . . are not harmed. . . ." Florida's 3d Am. Compl., 3:07-md-1, Doc. 38, at 3-4, 57. Without the benefit of extra-record and expert testimony, the Court would be in no position to evaluate such demands to determine whether impacts to the rest of the system—not to mention the long-term prospects for the species—might outweigh any short-term benefit to the species.

The IOP provides an object lesson in this regard: if not for the unnecessary and unwise operating policy that caused massive releases from storage in 2006—a misguided policy that was *intended* to benefit the species—it would never have been necessary to

reduce the minimum flow in the Apalachicola River in 2007. In the end, therefore, the IOP did more harm than good, even for the species it was intended to protect. Other examples abound. Consider, for example, Florida's demands when it moved for injunctive relief in this case in 2006. Florida initially demanded and temporarily received a court order imposing an extremely high minimum flow in the Apalachicola River. Although originally intended to *protect* the mussel species, it quickly became apparent to the parties, and to the Court, that the levels demanded by Florida could not be sustained. As the United States District Court for the Northern District of Alabama held in reversing its decision to grant the relief that Florida demanded—after receiving testimony from U.S. Fish and Wildlife Service and from the Georgia Parties' experts—"the long term effect of drawing down [the federal reservoirs] could be more deleterious to the mussel species," not to mention the effect on others who depend upon the waters of the ACF Basin. *Alabama v. U.S. Army Corps of Engineers,* 441 F.Supp.2d 1123, 1136 (N.D. Ala. 2006); *see also id.* at 1137 ("The court cannot say based on the evidence before it that the injunction sought by Florida – mandatory minimum flows of 6,300 cfs until FWS issues its biological opinion on September 5, 2006 – will not do more harm than good to the mussels and the ACF ecosystem."). Given this history, the Court should be exceedingly reluctant to fashion any remedy that might affect reservoir operations without benefit of expert testimony.

Accordingly, the Georgia Parties respectfully seek leave to introduce such evidence at the appropriate time in conjunction with the Court's consideration of any Phase 2 remedy. If the Court determines that the Fifth Amended Scheduling Order requires the Georgia Parties to identify the subject matter of expert testimony relating to remedies issues at this time,

however, the Georgia Parties hereby request that they be permitted to present expert testimony on the subjects described below.

**A. Hydrological modeling and reservoir operations**

The Georgia Parties would desire to present the testimony of one or more experts in hydrological modeling relating to the capacity of the federal reservoirs in the ACF River Basin to provide downstream flow support, and the feasibility and impacts of any potential flow regime. It is essential to fully understand the feasibility of any proposed operating plan, as well as the full range of potential consequences that may result if a given plan is adopted. Expert testimony on hydrological modeling and reservoir operations, including a thorough evaluation of any proposed operating plan under the entire range of possible hydrologic conditions, is critical to that understanding. Accordingly, expert testimony on these subjects should be allowed if it is necessary for the Court to craft a remedy in response to Phase 2 claims.

**B. Biology**

Florida requests that this Court enter an injunction requiring the Corps to provide flow support and releases from storage sufficient to avoid "harm" to listed species in the Apalachicola River. If it becomes necessary to fashion a remedy relating to this claim, the Court would need to determine how any given operational regime would affect the protected species based upon their specific biological needs. Such impacts might not be obvious, however, to say the least—which is exactly why federal agencies are required to consult with the U.S. Fish and Wildlife Service before taking any action with the potential to affect protected species for better or worse. The Court should exercise similar caution by

considering the testimony of experts before imposing any remedy that might affect the species. Therefore, in the event that there is a need for the Court to consider implementing a remedy, the Georgia Parties request that they be permitted to present expert testimony on the biology, life history, current population status, habitat needs, and other factors that may affect the status and potential recovery of the needs of the federally protected species inhabiting the Apalachicola River.

**C. Economic and social impacts**

The Georgia Parties request that they be permitted to present expert testimony on matters relating to the economic and social impacts of any potential remedial order.

To the extent the Court intends to consider any interim injunctive relief in Phase 2 of this case, the Court will be required to weigh "the competing claims of injury . . . and the effect on each party of granting or withholding the requested relief." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987); *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982) ("It goes without saying that an injunction is an equitable remedy. It is not a remedy which issues as a matter of course [cit] or to restrain an act the injurious consequences of which are merely trifling." (citations and quotations omitted)).

Moreover, it is black-letter law that any party seeking permanent injunctive relief must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Natural Res. Defense Council v. Winter*, __ U.S. __, 129 S. Ct. 365, 374, 381 (2008). Indeed, with respect to the public interest factor of this analysis, the Supreme Court has repeatedly cautioned that courts exercising their equitable discretion "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 377 (quoting *Romero-Barcelo*, 456 U.S. at 312).

Any Court order imposing a specific operational regime could have sweeping consequences for all of those who rely upon the water resources of the ACF River Basin. As such, it is particularly appropriate for this Court to consider expert testimony relating to the economic and social costs associated with any order, as well as the potential benefits that would result.

**CONCLUSION**

The Georgia Parties respectfully submit that, as this Court ruled with respect to Phase 1 remedies testimony, it is premature to identify with particularity the subject matter of potential expert testimony relating to potential Phase 2 remedies, and that this may be appropriately addressed after this Court has ruled on the merits of the Phase 2 claims. Nevertheless, consistent with this Court's Fifth Amended Scheduling Order, the Georgia Parties request that they be permitted to present expert testimony under the circumstances and on the matters discussed herein. They also respectfully request that they be permitted to revise and amend this Notice, if necessary, once this Court has issued its merits decision on Phase 2 issues.

Respectfully submitted this 1st day of October, 2009.

THURBERT E. BAKER
Attorney General
Georgia Bar No. 033887
Robert S. Bomar
Deputy Attorney General
Georgia Bar No. 066400
Isaac Byrd
Deputy Attorney General
Georgia Bar No. 101150

/s/ R. Todd Silliman
Bruce P. Brown
Georgia Bar No. 064460
R. Todd Silliman
Georgia Bar No. 646005
John C. Allen
Georgia Bar No. 159073

MCKENNA LONG & ALDRIDGE, LLP
303 Peachtree Street, N.E.,
Suite 5300
Atlanta, Georgia 30308
Phone: (404) 527-4000
Fax: (404) 527-4198

*Attorneys for the State of Georgia*

/s/ Lewis B. Jones
Patricia T. Barmeyer
Georgia Bar No. 038500
Lewis B. Jones
Georgia Bar No. 042498

KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
(404) 572-4600 — Phone
(404) 572-5135 — Fax

*Attorneys for the Water Supply Providers*

/s/ Clyde Y. Morris
Clyde Y. Morris
Georgia Bar No. 523725

Clyde Y. Morris, LLC
2375 Whippoorwill Lane
Gainesville, Georgia 30501
Phone: (404) 403-4625
Fax: (678) 943-1817

*Attorney for Lake Lanier Association*

/s/ William M. Droze
William M. Droze
Georgia. Bar No. 231039
Gregory W. Blount
Georgia. Bar No. 064375
Natalie D. Sacha
Georgia Bar No. 558276

TROUTMAN SANDERS
Bank of America Plaza
600 Peachtree Street, N.E.
Suite 5200
Atlanta, Georgia 30308
(404) 885-3000 (T)
(404) 885-3900 (F)

*Attorneys for Gwinnett County, Georgia*

**CERTIFICATE OF SERVICE**

This is to certify that on this 1st day of October, 2009, the foregoing JOINT NOTICE OF INTENTION TO CALL EXPERTS ON REMEDIES ISSUES PURSUANT TO FIFTH AMENDED SCHEDULING ORDER was filed with the Clerk of the Court using the CM/ECF system, and was served upon counsel of record by all parties to this proceeding by electronic notification.

/s/ R. Todd Silliman________
*Counsel for the State of Georgia*